IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| GEORGIACARRY.ORG, INC., and BRIAN BARRS, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:14-CV-00178-JRH-BKE |
| U.S. ARMY CORPS OF ENGINEERS and THOMAS J. TICKNER, in his official capacity as Commander, Savannah District U.S. Army Corps of Engineers, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
<u>DEFENDANTS' MOTION TO TRANSFER CASE</u>**

**INTRODUCTION**

The instant lawsuit is virtually identical to a lawsuit filed by the same attorney on behalf of the same organization in the U.S. District Court for the Northern District of Georgia. In order to prevent unnecessary expenditure of judicial resources, avoid wasteful and duplicative litigation, and pretermit the possibility of inconsistent judgments, Defendants respectfully move to transfer this case to the Northern District of Georgia, where it can be consolidated with its nearly identical predecessor.

On June 12, 2014, Plaintiff GeorgiaCarry.Org, Inc. ("GeorgiaCarry"), together with an individual member of GeorgiaCarry, filed suit in the U.S. District Court for the Northern District of Georgia ("Northern District") against the U.S. Army Corps of Engineers ("Corps"), challenging the constitutionality of the Corps' regulation of firearms on Corps-managed recreational areas. Compl., <u>GeorgiaCarry v. U.S. Army Corps of Eng'rs</u>, No. 4:14-cv-00139-

1

HLM ("GeorgiaCarry I") (attached as Ex. 1). On August 18, 2014, the Northern District denied Plaintiffs' motion for a preliminary injunction, finding that Plaintiffs had neither demonstrated that they were likely to succeed on the merits, nor that they were likely to suffer irreparable harm or that the balance of the equities favored them. Order, GeorgiaCarry I, __ F. Supp. 2d __, 2014 WL 4059375, at *3-12 (N.D. Ga. Aug. 18, 2014). On August 27, 2014, at the plaintiffs' request, the Northern District stayed all proceedings in GeorgiaCarry I pending the Eleventh Circuit's adjudication of the plaintiffs' interlocutory appeal of the denial of preliminary injunctive relief. Plaintiffs represented to the Court that they were seeking a stay of proceedings "[i]n an effort to conserve both judicial resources and the Parties' resources." GeorgiaCarry I, Pl. Mot. for Stay of Further Proceedings, ECF No. 26 (Aug. 26, 2014).

However, eight days later, GeorgiaCarry, together with an individual member of GeorgiaCarry, filed this action ("GeorgiaCarry II"). See ECF No. 1. This lawsuit raises claims that substantially overlap with those asserted in GeorgiaCarry I. Pursuant to the first-filed rule, and in the interests of justice and judicial efficiency, Defendants respectfully move to transfer this case to the Northern District to permit that Court to determine whether the first-filed rule applies to GeorgiaCarry I and this case.

In the alternative, Defendants respectfully move this Court to transfer this case to the Northern District pursuant to 28 U.S.C. § 1404. Transfer of this case promotes the interests of justice and convenience of the parties. It is inimical to judicial economy and the interests of justice to allow a single organization to initiate and pursue the filing of two virtually identical lawsuits, and to litigate simultaneously the same causes of action against the Corps in two different federal courts. In these circumstances, the prospect of wasteful and duplicative litigation – and inconsistent judgments – strongly favor transfer. Transfer to the Northern

District is especially appropriate because that is the District in which GeorgiaCarry maintains its principal office, in which its principal officers reside, and where counsel for Plaintiffs maintains his place of business.  As a result, consolidation in the Northern District will best serve the convenience of the parties and promote the parties' and the courts' interest in a speedy resolution of this controversy.  Moreover, given the very early stage of this litigation, transfer will not prejudice the interest of any plaintiff in either action.

  For these and the reasons that follow, Defendants request that the Court transfer this case to the Northern District.

## ARGUMENT

**I. This Case Should Be Transferred to the U.S. District Court for the Northern District of Georgia to Permit That Court to Determine Whether the First-Filed Rule Applies.**

"The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." Collegiate Licensing Co. v. Am. Cas. Co., 713 F.3d 71, 78 (11th Cir. 2013) (citing Merrill Lynch, Pierce, Fenner & Smith v. Haydu, 675 F.2d 1169, 1174 (11th Cir. 1982)).  "Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) (citations omitted).  The Eleventh Circuit requires that "the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." Id. (quoting Merrill Lynch, 675 F.2d at 1174).  The first-filed rule "rests on principles of comity and sound judicial administration" and "serves to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case

raising issues that might substantially duplicate those raised by a case pending in another court." Marietta Drapery & Window Coverings Co. v. N. River Ins. Co., 486 F. Supp. 2d 1366, 1369 (N.D. Ga. 2007) (quoting Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 604 (5th Cir. 1999)).

"Once the likelihood of substantial overlap between the two suits [has] been demonstrated," the court with the first-filed case decides whether, in fact, the first-filed rule applies. Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971)[1]; see also Collegiate Licensing, 713 F.3d at 78 ("The first-filed rule not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated."); Cadle Co., 174 F.3d at 600 ("[O]nce the district court found that the issues *might* substantially overlap, the proper course of action was for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed.") (emphasis added); accord In re Checking Account Overdraft Litig., 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012); Marietta Drapery, 486 F. Supp. 2d at 1370; Kate Aspen, Inc. v. FashionCraft-Excello, Inc., 370 F. Supp. 2d 1333, 1338 (N.D. Ga. 2005).[2] "All that need

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

[2] Defendants are mindful that, contrary to Collegiate Licensing and Mann Manufacturing, some district courts in this Circuit have found that the second court should determine whether the first-filed rule applies. See, e.g., Merswin v. Williams Cos., Inc., No. 08-2177, 2009 WL 249340, at *3 (N.D. Ga. Jan. 30, 2009) (declining request for transfer to court where case was first-filed); United States v. 22.58 Acres of Land, No. 08-180, 2010 WL 431254, at *5-7 (same). However, both of these decisions predate the Eleventh Circuit's contrary statement in Collegiate Licensing. Additionally, neither decision – and no district court decisions in this Circuit that Defendants have been able to locate – appears to have been aware of the Fifth Circuit's contrary holding in Mann Manufacturing. See Mann Mfg., 439 F.2d at 408 ("Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the court in Texas [the second-filed court] to resolve the question of whether both should be allowed to proceed.

be present [for the rule to apply] is that the two actions involve closely related questions or common subject matter. The cases need not be identical to be duplicative." Strother v. Hylas Yachts, Inc., No. 12-80283, 2012 WL 4531357, at *2 (S.D. Fla. Oct. 1, 2012) (quoting Texas Instruments Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 997 (E.D. Tex. 1993) (internal punctuation omitted)); accord Goldsby v. Ash, No. 09-975, 2010 WL 1658703, at *2 (M.D. Ala. Apr. 22, 2010) (citing cases). "Courts have noted that a substantial relationship exists between two suits where the issues, though not identical, are similar enough that the cases would be consolidated if filed in the same court." O'Hare v. Vulcan Capital, L.L.C., No. 04-566, 2007 WL 996437, at *2 (W.D. Tex. Feb. 20, 2007) (citing Save Power Ltd. v. Syntek Finance Corp., 121 F.3d 947, 950 (5th Cir. 1997), and Texas Instruments, 815 F. Supp. at 997).

GeorgiaCarry I and GeorgiaCarry II substantially overlap with one another. In determining whether the first-filed rule applies, the court in which the initial case was filed examines (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues. Laskaris v. Fifth Third Bank, 962 F. Supp. 2d 1297, 1299 (S.D. Fla. 2013). As to the chronology of the two actions, GeorgiaCarry II post-dates GeorgiaCarry I by over two months. And with respect to the similarity of the parties and issues, even a cursory comparison of the complaints filed in the two cases shows that GeorgiaCarry II is essentially a carbon copy of GeorgiaCarry I:

---

By virtue of its prior jurisdiction over the common subject matter and its injunction of suit involving that subject matter in Texas, the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in New York belonged to the United States District Court in New York [the first-filed court].") (footnote omitted). Because Mann Manufacturing was decided by the Fifth Circuit before October 1, 1981, it is binding precedent in this Circuit. Bonner, 661 F.2d at 1209.

- The complaints in GeorgiaCarry I and in the present case differ substantively only in the identities of the second named plaintiff, the location of the Corps recreational facility frequented by this second plaintiff, and the second named defendant.
- The plaintiffs in both cases are GeorgiaCarry and a member of GeorgiaCarry residing in Georgia; the defendants are the Corps and the Corps' local District Commander.
- Both cases were filed by the same counsel.
- The sole cause of action asserted in both complaints is phrased identically, except for the substitution of one nominal plaintiff's name for another. Compare Compl. ¶¶ 38-39 with Ex. 1, at ¶¶ 34-35.
- Both complaints seek virtually the same relief, except that the injunctive relief sought here is slightly more limited. Compare Compl. ¶¶ 40-43 with Ex. 1, at ¶¶ 36-39.
- Much of the substance of the two complaints is also phrased almost identically, if not verbatim. Compare Compl. ¶ 1 with Ex. 1, at ¶ 1 ("Introduction"); Compl. ¶¶ 2-3 with Ex. 1, at ¶¶ 2-3 ("Jurisdiction & Venue"); Compl. ¶¶ 4-13 with Ex. 1, at ¶¶ 4-13 ("Parties"); Compl. ¶¶ 14-37 with Ex. 1, at ¶¶ 14-33 ("Factual Background").

Additionally, GeorgiaCarry has made no effort to disguise the fact that the two lawsuits are related. See Rachel Stockman, Group Files Lawsuit to Permit Guns at Federally Operated Lakes (Sept. 10, 2014) (attached as Ex. 2) ("A gun rights group filed a second lawsuit against the U.S. Corps of Engineers' policy that prohibits guns. It was filed in the Southern District of Georgia District Court. . . . 'We are hoping to have the courts declare the regulation unconstitutional,'

said John Monroe, who is representing the plaintiffs and Georgiacarry.org, suing the government in both cases.").[3]

Moreover, though Plaintiff Barrs and Defendant Tickner are not parties in GeorgiaCarry I, that fact alone does not make it unlikely that the two cases substantially overlap.  See Mann Mfg., 439 F.2d at 408 n.6 ("[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized of the issues."); Save Power, 121 F.3d at 951 ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action.").  Courts have repeatedly found a likelihood of substantial overlap existed between two cases, despite the fact that the parties to the cases were not identical.  See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 731 n.5 (5th Cir. 1985) (noting that incomplete identity of parties does not mandate that two "essentially identical" actions remain pending simultaneously where complete relief was nevertheless available in one forum and the missing parties probably could be made parties to the action in that forum); Cadle Co., 174 F.3d at 600-06 (remanding to district court with instructions to transfer second-filed action to first-filed court, even though the second-filed action involved additional defendants); Nat'l Health Fed. v. Weinberger, 518 F.2d 711, 712-14 (7th Cir. 1975) (affirming dismissal of second-filed action where "issues raised in both complaints are identical," despite the fact that second-filed action involved different plaintiffs than first-filed action).[4]

---

[3] *Available at* http://www.wsbtv.com/news/news/local/group-files-lawsuit-permit-guns-allatoona-lake/nhKkZ/.

[4] See also Achari v. Signal Int'l, No. 13-222, 2013 WL 5705660, at *1-4 (S.D. Miss. Oct. 18, 2013) (transferring four second-filed cases to first-filed court, even though the cases were brought by different plaintiffs, because the legal issues involved "are almost identical"); Bankers Ins. Co. v. DLJ Mortgage Capital, No. 10-419, 2012 WL 515879, at *1-5 (M.D. Fla. Jan. 26, 2012) (recommending transfer of second-filed case to first-filed court, even though the two cases

Accordingly, because it is likely that GeorgiaCarry I and II substantially overlap, the Court should transfer this case to the Northern District to permit that Court to determine whether the first-filed rule applies to the two cases.[5]

## II.    In the Alternative, the Court Should Transfer This Case to the U.S. District Court for the Northern District of Georgia Pursuant to 28 U.S.C. § 1404.

In the alternative, Defendants respectfully request the Court to transfer venue in this case to the Northern District pursuant to 28 U.S.C. § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party seeking transfer has the burden to establish that the transfer is warranted. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). The decision to transfer a case under Section 1404(a) rests within the Court's sound discretion. See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 654-55 (11th Cir. 1993) (reviewing district court's transfer of venue for clear abuse of discretion).

---

were brought by different plaintiffs), adopted, 2012 WL 523629 (M.D. Fla. Feb. 16, 2012); Strother, 2012 WL 4531357, at *2 (first-filed rule applied even though two cases featured different parties); Rudolph & Me, Inc. v. Ornament Cent., LLC, No. 11-670, 2011 WL 3919711, at *1-3 (M.D. Fla. Sept. 7, 2011) (transferring second-filed action to first-filed court, despite the fact that the first-filed action included six additional defendants); Goldsby, 2010 WL 1658703, at *4 (transfer under first-filed rule was appropriate, even though named defendants in the two cases were different); Global Innovation Tech. Holdings v. Acer Am. Corp., 634 F. Supp. 2d 1346, 1347-49 (S.D. Fla. 2009) (transferring second-filed case to first-filed court, despite the fact that the cases involved different defendants); O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., No. 04-359, 2006 WL 887391, at *1-2 (E.D. Tex. Mar. 28, 2006) (transferring second-filed action to first-filed court, despite the fact that second-filed action involved additional parties and claims); Versus Tech. v. Hillenbrand Indus., Inc., No. 04-168, 2004 WL 3457629, at *5-8 (W.D. Mich. Nov. 23, 2004) (transferring second-filed action to first-filed court, despite the fact that the first-filed action had additional defendants); Calif. Sec. Co-Op. v. Multimedia Cablevision, 897 F. Supp. 316, 317-21 (E.D. Tex. 1995) (transferring second-filed action to first-filed court, even though two actions involved different parties); Gov't of Virgin Islands v. Neadle, 861 F. Supp. 1054, 1055-56 (M.D. Fla. 1994) (staying second-filed action until resolution of first-filed action, even though first-filed action had additional plaintiff and additional defendants).

[5] If the Court transfers this case, Defendants will promptly move the Northern District to lift the current stay of proceedings in GeorgiaCarry I for the limited purpose of allowing that Court to determine whether the first-filed rule applies here.

8

Whether transfer is appropriate depends upon two inquiries: (1) whether the action might have been brought in the proposed transferee court, and (2) whether the various convenience factors are present to justify the transfer.  Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001).  Because this action could have been brought in the Northern District, and the balance of convenience factors weighs in favor of transfer, the Court should transfer this action to the Northern District.

### A. Venue and Jurisdiction Are Proper in the Transferee District.

The preliminary inquiry is whether a civil action "might have been brought" in the destination venue.  28 U.S.C. § 1404(a).  It is clear that this case could have been brought in the Northern District.  Venue is proper in that District pursuant to 28 U.S.C. §§ 1391(c)(2) and (e)(1), and the Northern District possesses jurisdiction over the case under 28 U.S.C. § 1331.[6]  Lead plaintiff GeorgiaCarry maintains its principal place of business in Fayetteville, Georgia.  See Report, GeorgiaCarry.Org, Inc., Georgia Secretary of State, Corporations Division, at 1 (attached as Ex. 3).  Thus, venue is proper in the Northern District under 28 U.S.C. § 1391(e)(1), which provides that a civil action in which a defendant is a federal agency or an officer or employee of a federal agency may be brought in a judicial district in which a plaintiff in the action resides, and 28 U.S.C. § 1391(c)(2), which provides that for venue purposes, a corporate plaintiff resides in the district in which it maintains its principal place of business.

---

[6] Section 1391(e)(1) provides in relevant part that "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity . . . , or an agency of the United States, . . . , may, except as otherwise provided by law, be brought in any judicial district in which . . . the plaintiff resides if no real property is involved in the action."  Section 1391(c) provides, in relevant part, that "[f]or all venue purposes, . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business. . . ."  Title 28 U.S.C. § 1331 provides that district courts have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

9

There can be no dispute that the Northern District has proper subject matter jurisdiction over this case, because a federal question – the constitutionality of a federal regulation – is clearly presented. 28 U.S.C. § 1331. Because this case could have been brought in the Northern District, transfer there is proper pursuant to Section 1404(a).

### B. The Convenience Factors Weigh in Favor of Transfer to the Northern District of Georgia.

In this Circuit, the convenience factors include:

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel, 430 F.3d at 1135 n.1. An analysis of the convenience factors shows that they weigh in favor of transfer.

Convenience of the witnesses. This factor is irrelevant because, as explained below, witness testimony is not appropriate in this case.

The sole applicable waiver of sovereign immunity for Plaintiffs' cause of action is the waiver contained in the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), and judicial review under the APA is limited to review of the administrative record. As an examination of Plaintiffs' complaint demonstrates, this action seeks judicial review of administrative agency action – namely, the Corps' decision to enforce its firearms regulation – under the Second Amendment. See Compl. ¶¶ 38-39. But Plaintiffs cannot maintain a private right of action directly under the Second Amendment against Defendants because sovereign immunity bars such an action. See United States v. Timmons, 672 F.2d 1373, 1380 (11th Cir. 1982) ("Defendants' [counter]claims based directly on Fifth Amendment violations are likewise

barred under the doctrine of sovereign immunity."); Salomone v. United States, No. 08-1574, 2009 WL 2957279, at *4 (N.D. Ga. Sept. 15, 2009) ("[T]here is absolutely no authority supporting plaintiff's claim that the United States waived sovereign immunity by enacting the Constitution itself."); see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 410 (1971) (as to Fourth Amendment violations, "[h]owever desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit"). In fact, the only waiver of federal sovereign immunity that could apply to Plaintiffs' claim for relief under the Second Amendment is the waiver provided under the APA. See 5 U.S.C. § 702 (waiving sovereign immunity for federal claims seeking relief other than money damages against federal agencies and federal officials sued in their official capacities). And the only applicable cause of action for Plaintiffs' claim appears in Section 704 of the APA. See id. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review.").

Consequently, because the APA supplies the only applicable cause of action and sovereign immunity waiver for Plaintiffs' claims, if the reviewing court were to decide this action on the merits, review of Plaintiffs' claims would be limited to review of the administrative record, and witness testimony would not be appropriate. See 5 U.S.C. § 706 (in making its determinations, "the court shall review the whole record or those parts of it cited by a party. . ."); Camp v. Pitts, 411 U.S. 138, 142 (1973) (under the APA standard of review, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). "[T]he general rule, applicable across the board to judicial review of administrative action . . . , is that the court may not go outside the administrative record." Najjar v. Ashcroft, 257 F.3d 1262, 1278 (11th Cir. 2001) (citation and

internal quotation marks omitted); see also Alabama-Tombigbee Rivers Coalition v. Kempthorne, 477 F.3d 1250, 1262 (11th Cir. 2007) (under the APA, "[t]he focal point for judicial review of an administrative agency's action should be the administrative record") (citation omitted); P.E.A.C.H., Inc. v. U.S. Army Corps of Eng'rs, 87 F.3d 1242, 1246 (11th Cir. 1996) (when conducting APA review, the "task of the reviewing court is to apply the appropriate . . . standard of review . . . to the agency decision based on the record the agency presents to the reviewing court") (citation omitted).  Because the record compiled by the agency, not witness testimony, would be the basis of any review on the merits, the "convenience of witnesses" factor is irrelevant or neutral to the transfer determination.

Location of relevant documents and relative ease of access to sources of proof.  Because this is a record review case, review on the merits is limited to the record compiled by the agency.  This factor is therefore neutral.

Convenience of the parties.  Having already initiated a related action in the Northern District, counsel for Plaintiffs cannot seriously argue that pursuing this case in that forum would be unduly inconvenient, or that Plaintiffs would be unable to bear the expense of litigation in that judicial district.  Moreover, Plaintiffs will not be prejudiced by a transfer because this case is in the very earliest phase of litigation.  Additionally, Plaintiffs' counsel is based in Roswell, Georgia, in the Northern District, and as noted above, the lead plaintiff (and its principal officers) have their principal place of business in Fayetteville, Georgia, which is also within the Northern District.   In light of all these facts, this factor weighs in favor of transfer.

Locus of operative facts.  Because this case essentially involves a pure issue of law (viz., whether the Corps' firearms regulation, as applied to Plaintiffs, violates the Second Amendment), this factor is irrelevant here.

Availability of process to compel the attendance of unwilling witnesses. Given the fact that this is a record review case, and live testimony is not only unnecessary but prohibited except under the rarest of circumstances, this factor is irrelevant.

Relative means of the parties. Both parties have equal means to litigate this case in the Northern District. This factor is thus neutral.

Forum's familiarity with the governing law. Because federal law governs this case, this factor is neutral.

Weight accorded a plaintiff's choice of forum. In light of the fact that a related case is pending in the Northern District, this factor should be entitled to no weight. See Crimson Yachts v. M/Y Betty Lyn II, No. 08-334, 2011 WL 176052, at *5 (S.D. Ala. Jan. 19, 2011) (because the interests-of-justice factor favored transfer to the district where a first-filed action was pending, "this factor neutralizes the significance ordinarily placed on the plaintiff's choice of forum"); Martin v. South Carolina Bank, 811 F. Supp. 679, 686 (M.D. Ga. 1992) ("[A]lthough a plaintiff's choice of forum is entitled to deference, it is not a more important factor than the presence of related proceedings in the transferee district.").

Trial efficiency and the interests of justice, based on the totality of the circumstances. The interests of justice compel transfer of this case to the Northern District. Permitting this lawsuit and GeorgiaCarry I to proceed simultaneously in two different fora will virtually double the energy and resources required of the parties and the judicial system to resolve this dispute. The U.S. Supreme Court has long recognized that Section 1404(a) is intended to protect against such a scenario. See Ferens v. John Deere Co., 494 U.S. 516, 531 (1990) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was

13

designed to prevent.") (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)). The objectives of Section 1404(a) are "to prevent the waste of time, energy and money and to protect . . . the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations omitted). Such unnecessary inconvenience and expense of judicial resources is even more pronounced in a situation such as this one, where the complaints in both suits include in their Prayers for Relief claims for both preliminary and permanent injunctive relief. See Compl. at Prayer for Relief; Ex. 1 at Prayer for Relief.

Additionally, "consolidation with a case pending in another district is a relevant factor under § 1404(a)." Greely v. Lazer Spot, Inc., No. CV 411-096, 2012 WL 170154, at *4 (S.D. Ga. Jan. 19, 2012) (citation omitted). "The presence of related proceedings in the transferee court is a factor that should be considered by a court when determining whether a transfer is appropriate." Id. (citations omitted); see also DataTreasury Corp. v. First Data Corp., 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) ("Transfer [under 28 U.S.C. § 1404(a)] is particularly appropriate where related cases involving the same issues are pending in another court."). As explained above, GeorgiaCarry I, a related case, is currently pending in the Northern District. Consolidation will allow the Northern District to address the identical legal issues presented in these cases simultaneously. And the presence of a related case "is powerful enough to tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest opposite." Weber v. Basic Comfort Inc., 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001); see also DataTreasury, 243 F. Supp. 2d at 594 (noting that since the Supreme Court's decision in Continental Grain, "a number of courts . . . have held that the existence of related litigation in a transferee court is a factor that weighs *strongly* in favor of transfer") (citing cases) (emphasis added); Sapp v. FirstFitness Int'l, No. 09-48, 2009 WL 2997624, at *3 (M.D. Ga. Sept. 16, 2009)

(if related actions are pending in the transferee district, "the interest of justice is generally thought to weigh heavily in favor of transfer" because litigating the actions in the same court "avoids duplicative litigation where one court has already invested substantial time and energy in a case") (quoting Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 707, 721-22 (E.D. Va. 2005)) (internal punctuation omitted).

Furthermore, permitting two identical lawsuits to be separately litigated could lead to inconsistent judgments: one holding that the Corps regulation is constitutional, and one holding that it is not. This scenario is one that Section 1404(a) seeks to guard against. See Convergence Technologies (USA), LLC v. Microloops Corp., 711 F. Supp. 2d 626, 642 (E.D. Va. 2010) ("[I]t is well-settled that transfer under § 1404(a) is generally in the interest of justice if a decision not to transfer would lead to courts rendering inconsistent judgments on the same issue."); accord Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (dictum) (when two cases pending in two different federal district courts raise the same issues, "the general principle is to avoid duplicative litigation"). The virtually-identical nature of the claims in these two cases would allow for determinations in different courts that could create direct and irreconcilable conflict. But transferring this case to the Northern District would avoid the unnecessary waste of duplicative actions. Thus, consolidating the pending cases in the Northern District will serve the interests of justice by promoting an efficient resolution of identical legal issues.

In sum, two factors weigh in favor of transfer (one heavily so), and the remaining factors are at most neutral, irrelevant, or entitled to no weight. The analysis of these factors thus weighs in favor of transfer.

"Simply stated, why allow two courts to decide similar issues when one court can decide these issues more efficiently?" Meterlogic, Inc. v. Copier Solutions, 185 F. Supp. 2d 1292, 1303 (S.D. Fla. 2002). To avoid wasteful and duplicative litigation, pretermit the possibility of inconsistent judgments, and to promote judicial economy, as well as the parties' (and the public's) interest in a speedy resolution of Plaintiffs' claims against Defendants, this case should be transferred to the Northern District, where it can be consolidated and decided by a single federal court.

## CONCLUSION

For the foregoing reasons, the Court should transfer this action to the United States District Court for the Northern District of Georgia.

Dated: November 7, 2014

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

 /s/ Daniel Riess
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS (Texas Bar No. 24037359)
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov

EDWARD J. TARVER
United States Attorney

 /s/ Edgar D. Bueno
EDGAR D. BUENO
Assistant United States Attorney
Virginia Bar No. 41307
22 Barnard Street, Suite 300

>Savannah, Georgia 31401
>(912) 652-4422
>Edgar.Bueno@usdoj.gov
>
>*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that, on November 7, 2014, I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the parties' attorneys of record.

This 7th day of November, 2014.

>  /s/ Daniel Riess
>  Daniel Riess